## NEGRO ABSOLUM MORRIS v. JOHN SPIER.

Court of Quarter Sessions. November, 1807.

*Wells' Notebook, 356b.*

*Horsey* and *Wells* for petitioner, and *Vandyke* for Spier.

The petitioner was sold by his former master, Harris, to Spier. The bill of sale was an absolute transfer under seal of all Harris' interest in the Negro to Spier, with a warranty in the same instrument of Harris that the Negro should be free at the end of ten years. Spier had intended to sell him to Carolina men but changed his mind upon the Negro behaving himself better. He afterwards carried and sent him frequently as one of his hands, in a vessel he owned, to Baltimore. The last time he went he asked the Negro if he would consent to be sold or assigned over to some person in Baltimore. The Negro consented, then refused, consented etc. He was carried to a stone-cutter, who refused to take him unless he would agree to serve. The Negro would not consent, escaped, and returned to Delaware. He provided himself with pistols and a knife, with which he declared himself resolved to take his master's life. He was taken by force and conducted to Georgetown jail. The court ordered him into the custody of the sheriff pending the trial.

*Horsey* and *Wells* contended: first, the Negro was sold as a slave because no security taken to indemnify in court, 1 Del. Laws 436 s. 1, 2 Del.Laws 886 and 1323. The Negro, it is true, was not at the date of the execution of this agreement thirty years of age, but then it was not to take effect until after the Negro was thirty-five years of age. Second, the sale is a total transfer, and the warranty repugnant, 2 Bl.Comm. 381, Co.Litt. 1112. Third, if the manumission is good, still he is a slave for ten years. Being a slave, they contended that he was exported, which alone, by 2 Del.Laws 1094, amounts to an emancipation. There are no exceptions but in the case of imports, 2 Del.Laws 886 and 941. A law in favor of liberty, of a natural right, must be liberally construed. The court can make no exceptions to the

24

general rule, and if they could, the danger to liberty would be greater than the inconvenience to property. Various pretences would be resorted to for sending them out of the state; every sleeveless errand would be a cover to a sale. They contended likewise that he was exported for sale, evidenced by the attempts at Baltimore, and by the attempts at home. And lastly, they urged that he is free by the Maryland Laws, Abr.[1] 384 s. 42, 45.

The Court said they had long been unwilling to determine what was the character of a negro slave declared to be free at a certain time, whether he was a slave or a servant for years.

*Curia advisare vult.*

Petition dismissed, November 26, 1807.

## CAREY v. ROBBINS.

Supreme Court. March, 1808.

*Wells' Notebook, 357.*

---

[1] This reference is to *A Digest of the Laws of Maryland Being an Abridgment, Alphabetically Arranged, of All the Public Acts of Assembly now in Force, and of General Use,* by Thomas Herty, Baltimore, printed for the editor, 1799.